Good morning. Judge Jordan and I want to extend our thanks for the second day to Judge Kermit Lopez from the First Circuit Court of Appeals who hails from Portland, Maine. We're happy to have him here and it's been a very, I don't want to say tough, sitting. We have nine arguments scheduled for a two-day sitting which is to help him earn his travel expense somehow, but thank you. Thank you. It is a workout, but it's a great pleasure to be here. Thank you. All right, we'll call our first case of this session, United States v. Jones. Good morning, Your Honors. My name is Tom Patton. I represent the appellant, Mekail Jones, and I would like to request three minutes of rebuttal time, please. That's granted. The district court sentence in this case needs to be reversed for three reasons. First, the district court erred in finding that a Pennsylvania misdemeanor fleeing or eluding conviction categorically was a crime of violence. Second, the judge erred in finding that Mr. Jones committed an assault upon Officer Ondurko when he ran away from Officer Ondurko and Officer Ondurko tackled Mr. Jones from behind. And finally, the judge committed procedural error by, number one, presuming that the guideline range was the presumptively reasonable sentence, and, number two, by failing to address a meritorious claim that we raised about the application of the 3553A fact. Why don't we start with your assertion in the supplemental letter briefs about the camp. Is this Pennsylvania statute divisible and overbroad in the language of the camp? I believe it is divisible in the sense that you can divide the misdemeanor violation from the felony violation, because to be guilty of the felony violation, the State has to prove an additional element beyond a reasonable doubt. But he was convicted of the misdemeanor. That is correct. So in order to be divisible, it would have to be divisibility within that provision, wouldn't it? My point is simply, overall, it's divisible between the misdemeanor and the felony versions. I do not believe that the misdemeanor version itself is divisible within itself. So there should be no modified categorical approach here. I would agree. Once you understand that he actually pled guilty to the misdemeanor offense and once it's understood that that is what he pled guilty to, then, yeah, I don't think that there's any modified categorical approach. The misdemeanor offense is any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop or who otherwise flees or attempts to elude a pursuing police officer when given a visual and audible signal to bring the vehicle to a stop. Correct? That is correct. Now, under Sykes, isn't it pretty clear from the standpoint of the Supreme Court that, as Justice Kennedy said, confrontation with police is the expected result of vehicle flight? It places property and persons at serious risk of injury. Risk of violence is inherent to vehicle flight. Isn't that kind of open and shut categorical approach that this is a crime of violence? It is not, Your Honor. Sykes specifically, Justice Kennedy in his opinion for the court, specifically withheld deciding whether or not if there is a true lesser included offense, if the true lesser included offense could not be a crime of violence. Now, the government in Sykes argued to the Supreme Court that it should. Does he rely on that reasoning, really? I mean, he rebuts a challenge that Sykes makes, but is that really a holding of the case? Yes. They specifically said that the government would have them go further and find that when doing the categorical approach, it makes no difference if there is a lesser included offense. And then he says, we don't have to take that step here, and so they do not. Right. We're in the space that was reserved, right? Correct. So the question is, even though they didn't go that far because their case didn't call for it, does the language of the majority opinion not drive, when the question is presented as it squarely is here, does the language of the majority opinion not drive to the same conclusion in this instance, that it doesn't matter, you know, you can call it a misdemeanor, you can call it a felony, you can call it Bob, it doesn't matter what you call it when you're in a car and you're trying to get away from the police, you put yourself, the police, and other people at risk. That's the language of Sykes. That's the question that I think has been put to you. It does not drive, Your Honor. And the reason is, is when any court applies the categorical approach, it is doing so based upon the elements of the statute before it. Because the categorical approach is all about what conduct violates the elements of the offense. So what is there about what I read that doesn't fit with Sykes? Because in Pennsylvania, if the defendant engages in conduct, the language of the statute is, endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase, which the Pennsylvania Superior Court, that's what makes it a felony. Right. We don't have that. You don't, but here's why Sykes doesn't control. As this court said in the United States v. Lewis, which it's an unpublished opinion, but it's an opinion we cite, where they were trying to decide whether an Ohio burglary was a crime of violence versus an aggravated burglary. The government made the same argument, said that we argued that burglary wasn't a crime of violence, because under the peculiar Ohio statute in that case, if somebody was likely to be present, it was aggravated burglary. And Mr. Lewis was only convicted of burglary. The government argued, doesn't make any difference, court. You shouldn't, don't worry yourselves that there's aggravated burglary and just regular burglary. And this court said that, no, that approach was wrong, that statutes don't exist in a vacuum divorced from the overarching legislative scheme that they're a part of. True enough. True enough. But we didn't have a Supreme Court opinion that says burglary is inherently risky and violent. Well, actually, burglary is an enumerated offense. And this court said that the way Ohio had defined burglary, the risk was less than an enumerated burglary. You could make a distinction. And I understand that your argument is, if I've got it right, look, the Pennsylvania statute, the legislature in Pennsylvania chose to make the dividing line exactly along the risk line that the government and the district court want to ignore. That they've got a section, they've got a felony piece that deals with high risk, and then they've got the other. And he pled for the lesser, and that should control. But here's the question that I have when I mull over that argument. First, I look at the language of the actual statute, which for the felony says it'll be a felony offense if there's, quote, an endangering law enforcement officer or member of the general public due to the drivers engaging in a high-speed chase. So the fact that a high-speed chase will get you a felony, doesn't that leave a whole lot of risky, indeed, substantially risky behavior underneath the felony picked up by the misdemeanor? It does not, Your Honor, for this reason. Because it's a high-speed chase, or as safe as can be? There's nothing less? No, because when you're doing the categorical approach and deciding what conduct ordinarily satisfies the elements of the offense, you not only look at the statute, you look at the state court's interpretation of the statute. And in Pennsylvania, in NRA RCY, the Pennsylvania Superior Court said, high-speed chase is not a, we're not interpreting that literally. We're saying any conduct that presents a risk beyond the run-of-the-mill failure to stop violates the felony version. In that case, the driver never went faster than 35 miles per hour. And they still, the Superior Court said, that satisfies the element of the felony because we don't care, we're not looking at high-speed as a literal term. We're looking at if it presents any risk beyond the routine failure to stop. So your suggestion is that because there's a Superior Court case interpreting this statutory section as reaching chases that might not be viewed in ordinary parlance as high-speed, that that leaves, that leaves the misdemeanor covering only no-risk circumstances. Or risks that are comparatively, relatively less than the enumerated offenses. Well, I mean, the case actually says, require a different level of danger from the run-of-the-mill dangers posed. Right. It says, okay, there are dangers, there are run-of-the-mill dangers, but they're dangers. And then there's the different level of danger. Sure. It posits that, but there are run-of-the-mill dangers. Every offense has dangers. The question in doing the, interpreting the otherwise clause is, is it a danger that is categorically or relatively the same as the arson, burglary, or use of explosives, or extortion? Is this the argument that was rejected by the majority in Sykes? I mean, Justice Kagan makes a very persuasive case and cites, in fact, the kind of statute that you're telling us this statute is. Imagine it's nothing more than a failure to stop. Nothing, you know, there's no danger at all involved in it, she says. We shouldn't be talking so broadly as the import of her message. And the only reason that those folks in the majority are doing what they're doing is because Indiana happened to call it all a Class D felony. But in the end, that's the position that loses. The position that wins is the position that when you're talking about fleeing in a vehicle, that involves a risk that we think, the majority in the Supreme Court, fits within the ACCA definition of violent felony. Two things. First, with regard to when you say, because there was a Pennsylvania interpretation of the statute, you have to rely on that. The Supreme Court says you have to do that. They did that in the James case with Florida's aggravated burglary, deciding what substantial step was enough and deciding what was curtilage under Florida law. The second, Justice Kagan's dissent made clear what the majority opinion made clear, saying they were not deciding the issue that's in front of you today. Sykes does not control on that. Well, that's true. That's a given. All we're trying to figure out is what is the import of Sykes for the case we've now got. The import of Sykes is you look at the elements of the statute that's in front of you. And the statute that was in front of the Supreme Court from Indiana treated all flights from law enforcement in a vehicle as a Class D felony. Yes, but not all alike. They had a gradation just the way this one's got. Actually, it wasn't. When a vehicle, when it involved fleeing in a vehicle, it was always a felony. And that's why the Supreme Court shot down the argument there. It was a felony, but there were gradations. That was the whole point of the argument. There's this kind of level of risk. There's this kind of level of risk. There's this kind of level of risk. They had, like, four levels of risk they ran through, right? Right, but the key one was one subsection said that if you commit any of the violations in the one subsection in a manner that created a risk, they were a Class D felony. But there was another subsection that said, hey, if you violate A3, which was fleeing, and you do it in a vehicle, no matter what, it's always a Class D felony. And so what the Supreme Court said is Indiana has made the determination with the way, given the elements of their statute, that Indiana has made the determination that any flight in a vehicle creates these risks of injury. Aren't you fighting, though, against all the circuits that have addressed this issue? I think the Sixth, the Fourth, Eleventh have all said that even if there's an aggravated provision that involves, you know, special endangerment, still the lower level is still a crime of violence. Yes. The Sixth Circuit, the statute at issue there, the lesser included offense only was a lesser included offense. Excuse me. The aggravated offense was only if you create a danger to the public. It didn't include creating a danger to the police officers. And the Fourth and the Eleventh Circuit cases both dealt with the same Florida statute that bumped it up the penalty if there was a high-speed chase. But Florida law actually required there be a real high-speed chase. Do you want to address the – your light is on. Sure. And I wonder if you wanted to address briefly your other – The aggravated assault, Your Honors, would simply say that for there to be the aggravated assault, the parties agree that you use a common law definition of assault, which is the defendant either – the crime is committed by either a willful attempt to inflict injury upon the person of another or by a threat to inflict injury upon the person of another, which when coupled with an apparent presentability causes a reasonable apprehension of immediate bodily harm. And that's the – the government claims it was the latter type of assault. But the problem with that is, as we point out in the brief, it has to be an intentional crime, and there's no evidence that Mr. Jones was intending to try and put Officer Rondurco in fear of being harmed with the gun. And second, Officer Rondurco – When you say there's no evidence of that, the judge made a fact-finding after taking evidence that there was a deliberate attempt to draw the gun. Not consistent with throwing away, but to draw the gun. Is it not within the district court's fair ambit of discretion and fact-finding capacity to look at that and say, if you're trying to draw the gun and not to dispose of it, that you do have an intent? You can make inferences from the evidence, certainly. I don't believe the judge ever made a finding that I find the gun was drawn to be used. He simply said there are case laws that says – in fact, at the end of the first day, where we took the testimony, he pressed the prosecutor. He's like, where's the assault here? I don't see the assault. When we came back on the second day, when he announced the sentence, he never said, I find that there was an assault here. He just says, there's case law that says if you have a gun while you're running from the police, that can be enough. Unfortunately, he was relying on a case that was involving the reckless endangering enhancement instead of the aggravated assault. But even if you can find the intent, Officer Andurco was crystal clear that he never saw the gun. He said he saw Mr. Jones fumbling in his waistband, but he didn't know what he was going for, didn't see the gun, and, in fact, went a step further and said, if I had seen the gun or knew he had a gun, I would not have tackled him. Who shouted out that he has a gun? Somebody shouted out. Officer Baney shouted out. It was kind of like simultaneous. The thing was, as Andurco was tackling him, he heard somebody shout gun, but he never saw the gun and didn't know if there was a gun. And so Officer Andurco, who testified? And the government had the opportunity to lay this out to say, hey, did you see the gun? Were you afraid that you were going to get harmed? Officer Andurco's explanation for why he thought there was an aggravated assault was, I was in the line of my job and I got hurt, and I think that's an aggravated assault. He never said, I was in fear that I was going to get shot. I was in fear that he was going to use the gun against me. And there just isn't any assault by threatening if the person who is supposedly threatened doesn't suffer the mental, you know, anguish of being put in fear of serious bodily injury. Well, what do we do with the district court judge's finding that, and you've described it too, that these things were happening in the same – virtually simultaneously, so that even though Officer Andurco doesn't see it and he and Mr. Jones should stop running into each other in chase situations. It would be nice. As he's making his move against Mr. Jones, his partner yells gun. So, you know, his testimony may very well be, I wouldn't have gone for the fly and tackle had I seen the gun. But while I'm doing it, I hear gun, and I know he's reaching for something. Is there enough in that fact situation to say, like the district court did, good enough. Assault. There isn't, Your Honor. And the point I would make, and it's a point I made to the district court, it's not that you're saying that you can't consider when you're imposing the sentence on Mr. Jones that as he was running away from the police, a gun came out. This is a very specific, massive enhancement under the guidelines that has very specific requirements to it. And so simply saying that you can't use – hit him with a six-level enhancement for aggravated assault doesn't mean that the fact that he ran and the fact that he had the gun doesn't get factored into the sentence. So we're not – you know, it's not a one or the other. But your position is, had Officer Odernko been able to say definitively, I saw he wasn't running naturally, he was reaching for something in his pants. If he had said, and I figured it was a gun, six-level enhancement. If he sees the gun and says – or just say, I thought he had a gun and was pulling a gun out and it was reasonable for him to think so, then yes, that can be an assault because the assault is a – and if he hadn't seen it but he had heard his companion say, gun, before he launched the tackle, that would be enough, right? Because it's the perception. That's your point. It could have been. But yeah, because it is a subjective – and we cite this from Lefebvre on substance of criminal law. About mens rea. And not just the mens rea. It's that it's not enough, of course, to intend the scare without succeeding. If the other fails to notice the threatened battery, the threatener, not having succeeded in his plan, cannot be held guilty of assault. So it's just not an assault. And it doesn't mean that what Mr. Jones did is okay. It just means it's not an assault and so you don't get the six-level enhancement. All right. We'll hear from you on revival. Thank you. May it please the Court. My name is Mike Ivory. I'm an assistant U.S. attorney and I'm from Pittsburgh. Good morning, Your Honors. Good morning. I would like to address Mr. Patton's points in sequence. First of all, intentional vehicular flight is categorically a crime of violence under the sentencing guidelines. Secondly – What says that in the sentencing guidelines? I'm sorry, Your Honor? You say it's categorically a violent felony under the sentencing guidelines. I assume what you mean is the government's position is that that's what it is. That's correct. It's the government's participation in the guidelines. Because we didn't see it in the guidelines. I didn't see it. No. Well, again, we are dealing with a guideline issue here, whether or not the Pennsylvania vehicular flight statute is a crime of violence under the sentencing guidelines. Right. I believe Sykes controls the disposition of this matter. The other courts who have addressed this particular case, the Fourth, Sixth, and Eleventh Circuits, have looked at statutes that are virtually identical to the Pennsylvania statute. There's only one way by which the Pennsylvania statute can be violated, and then you have different gradations of penalties. Basically, what the – Was that true? In your answering brief, you say, the Pennsylvania Offensive Vehicular Flight Statute does not differ in any material respect from the Indiana Offensive Vehicular Flight. But it seems like it differs in one pretty dramatic way, and that is Pennsylvania chooses to call the low-risk form of it a misdemeanor and chooses to call the higher risk a felony, and that's something that didn't happen in Indiana. And that looks like, in fact, it was the dispositive point in Sykes. That's what the dissent points out, and it seems to be accurate that there's a – because they were all equally weighted Class D felonies in Indiana, the Supreme Court was going to treat them all alike. But here, Pennsylvania's made a different choice. Is that not a material difference? No, it's a distinction, I think, without a difference, Your Honor, because there's only one way by which the Indiana statute can be violated, as well as the Pennsylvania statute is violated. Whether it's the particular grade assigned by the legislature and whether certain types of flight are treated more severely, the bottom line is, as a categorical matter, all forms of intentional vehicular flight are inherently risky. That's what the Supreme Court held. All forms? All forms of intentional vehicular flight are categorically crimes of violence because of the risk imposed. Well, when you say that that is what they held, your opposing counsels made much of the fact, and it is a fact, that the Supreme Court said, we're not talking about lesser-included fines. We don't have to talk about that, and that's off the table. And the dissent is it pains to point out that that's not something that's being talked about. So when you say that's what Sykes holds, it looks like Sykes exactly doesn't hold that because they leave the question open expressly. Sykes held that all forms of intentional vehicular flight are comparable to the enumerated crimes of arson and burglary because, and in fact they even said that it's even more dangerous than burglary because flight necessarily occurs within the presence of the police officers. You can't have vehicular flight without the police being present. Does a mere failure to stop involve a serious potential risk of physical injury? Intentional failure to stop will fulfill your stop. Yes, it does, Your Honor. So. But that's not what Sykes held. Sykes talks about flight, and Justice Kagan categorizes the statute as a failure to stop, and ours is especially fleeing and eluding, basically. Flees or attempts to elude a police officer. Well, there has to be a failure to stop before you can flee or elude, Your Honor. But maybe it is only a failure to stop. I don't think so, but if you look at the Pennsylvania statute, they have affirmative defenses that deal with the willfulness aspect of the crime. But I think we might be getting too far afield at that point. I mean, I think when you look at the different types of cases that have analyzed this issue post-Sykes, that have looked at whether or not there are lesser-included offenses, they all use Sykes more or less as a floor, a floor that establishes that all forms of vehicular flight, intentional vehicular flight, pose a risk of danger, and that therefore, because of that risk, they are crimes of violence. And then they really don't have to address the different gradations of the penalties involved. Again, the Florida statute and the Tennessee statute that have been analyzed post-Sykes have relied upon the basic, the essence of Sykes, which is vehicular flight, intentional vehicular flight is a crime of violence. And whether or not there are... If you deposit a statute that said failure to stop, simple failure to stop is a misdemeanor, anything beyond failure to stop, a simple failure to stop is a felony, would the government's position be the same if Mr. Jones had been charged under that statute with failure to stop? Would you still be saying he's in a car, the car's moving, serious risk right there under Sykes, all over? What would the mens reta for that particular statute be? Would it be a reckless failure to stop? If it's a willful failure to stop after being told by the police, stop, and you go, and then... Well, sure, that's inherent. The point of a failure to stop statute is somebody in authority told you to stop. Right. So you can assume that. So your answer is... Yes, there is a potential. There's no set of statutory language that would take this out of crime of violence for the government. Because as long as a person is behind the wheel of a car, your position is you've got 6,000 pounds of metal around you, you're violent. At least there's a potential for a risk of violence, a risk of danger, which is what the Supreme Court did look at in Sykes. So the short answer to your question is yes, it would be a crime of violence, Your Honor. So when Justice Kagan says the majority doesn't address a simple failure to stop, and I don't understand them even implying that that would be a risk of violence, she doesn't understand the majority is what you're saying. I would never dare to say something like that. Your position is, oh, yes, that is a majority. My position is that under the particular hypothetical that you asked, Your Honor, using Sykes as a benchmark, yes, that would constitute a crime of violence. Maybe the statute is divisible. It says who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing vehicle officer. Maybe we have two out of three here that are categorical crimes of violence, where if you just fail or refuse to bring your vehicle to a stop, I mean, you can be looking in the rearview mirror and not see the police and they get upset and charge you with that, but certainly by its nature isn't violent. Would we apply anything other than the categorical approach here? This statute is, I believe, under the camps would be indivisible, so it would be the categorical approach that would apply. There's only one way to violate the statute, which is stop, no, go, chase. Well, it doesn't say and. It says or. That's correct, it does. But it's still the same mens rea. It's not like the Pennsylvania simple assault statute which had different types of mens rea pertaining to different types of acts, so the statute can be violated in multiple different ways. There's only one way by which this statute can be violated. I just don't understand that statement. It says, you just heard Judge Rendell read it to you. You can fail to bring your vehicle to a stop, or you can flee, or you can attempt to elude a police officer. Attempt to elude. Those are, are those not phrased in the disjunctive so that there's different ways that you can do this? Well, I think what you have to look at is that there has to be a failure to bring the vehicle to a stop because when it says, when given a visual and audible signal to bring the vehicle to a stop, and then who willfully fails to do so, or who otherwise flees or attempts to elude a pursuing officer. So clearly I think when you look upon it as there has to be a failure to stop the vehicle. I mean, that's a necessary factual predicate for all of this. And then you just have different types of conduct, not conduct, but you just have a chase. I mean. Well, it doesn't say chase. Well, that's correct. Cites touched on flight. It also touched on attempts to elude capture. It doesn't really talk about the failure to stop. The district court here looked at the conduct, really did a modified approach here. Wasn't that error? As an alternate holding, Your Honor, I believe the defense had argued that the modified categorical approach should have been utilized because the statute, I believe the phrase was criminalized violent as well as nonviolent behavior. But the judge didn't actually say this is categorically. He really did look at the conduct. I think when you look at Judge McLaughlin's analysis,  as well as the Doyle case, which specifically addresses the issue of gradation and lesser included offenses, a holding can be determined that, yes, categorically, this is a crime of violence. But then as an alternate, and I believe Judge McLaughlin's words work, you could also find it to be a crime of violence under the modified categorical approach. So the judge actually reached the same determination by two different routes. Are you defending his application of the modified, are you defending his application of the modified categorical approach? It frankly seems very difficult to defend. In light of DeKalb's, Your Honor, and I believe that the statute is indivisible, the categorical approach is the way to analyze this. So under DeKalb, the modified categorical approach cannot be applied to this. So if we disagreed with your categorical approach argument, we would have to reverse, would we not? I hope you wouldn't, but I think that would be. I understand that. That is what the law is. But it would be harmless if we agree. It would be harmless if you agreed. And it wouldn't be error if we find that it's divisible. Well. Right? It wouldn't have been error because he did the modified. He did. He reached the same result through the same two different routes. That is correct. What about chambers here for a minute? The lower courts and chambers sort of reasoned along the lines that, you know, any failure to report is violent because the police might come get you. Sort of the same way you're reasoning that any failure to stop at all might end up with some violence. And the Supreme Court said, that doesn't work. Those things are not the same. That failure to report is not the same as eluding arrest or evading arrest. Does that have anything? Should that be a cautionary tale for courts of appeals who read too broadly what might be a crime of violence? Well, I, again, I don't think there's any, I don't think there's getting around Sykes, which is different than chambers because you have to look at the, they reference the enumerated crimes of burglary and arson to determine how dangerous flight is. I don't believe that that analysis played a role in the chamber's decision. Well, the Supreme Court was, by its terms, dealing with the felonious vehicular flight statute. So, and we are, by the terms of the Pennsylvania statute, dealing with a statute that does not have us looking strictly at a felonious. It's categorized it. It's chosen to categorize it. Now you can say, given the length of time you could serve under the guidelines, it qualifies as a, quote, felony. I'm not going to get into that piece of the argument with you. But since Sykes went out of its way to say we're not talking about that, I ask you again, does chambers caution against reading violent felony too broadly because the mere risk that there might be a confrontation with police was not enough in chambers and the mere possibility that your failure to stop might cause harm isn't enough here? If we did a risk analysis of a failure for someone to report as opposed to someone who's operating 6,000 pounds of steel down a highway with the police following them, clearly there's a greater degree of danger involved with that. The police are necessarily always present when there's a failure to stop case. And when we look at the ordinary course, which is what we're supposed to do, invariably a lot of these incidents result in high-speed chases, are in chases where there is damage done to property. So if I, as an ordinary citizen, see the lights go on behind me, heaven forbid, and I don't pull over immediately, maybe I see something on the side of the road that makes me uncomfortable about pulling over right there, I travel another half mile before I pull over. Am I now a violent felon for purposes of the guidelines? It depends how willful you're being, Your Honor. Really? And how would anybody ever know that? Is it going to be noted on my conviction? It wasn't really very willful. Well, if you look at the Pennsylvania statute, there is an affirmative defense that says if it can be shown by a proponent to the evidence that the failure to stop immediately for a police officer's car was based upon a good-faith concern for personal safety. And you can look in to determine whether the time and location of the event, what type of police vehicle was being used, say, in your hypothetical. It's a plea, right? Like 99% of these things. Are you going to plead to the misdemeanor, or are you going to come in and fight it on affirmative defense? I plea, I'm out, I'm done. But now I'm a violent felon? Categorically speaking, yes. Yes, indeed. Would you touch on the assault aspect, please? Yes, Your Honor. Just briefly. I think what the record shows is that when Durko was chasing, Bainey was approaching from the front. Bainey was the individual who saw the defendant draw the gun. Judge McLaughlin found that he drew the weapon. Drawing a weapon during a foot chase with two police officers is conduct that clearly, as a defendant, you have reason to know that that's going to cause fear in the police officers. I mean, it's... Is the question, though, not what you have reason to know, but also what the police officer knows? Because that seems to be the argument that's pushed on us most aggressively, is that he didn't see a thing, he didn't know what was going on. Common law assault recognizes two types of common law assault. There's attempted battery where you don't even, as the victim, have to know that someone is trying to batterize you. Secondly, there is conduct. I guess menacing is the term of art that they use, and it's conduct that is intended to cause the victim to fear immediate bodily harm. The actions, the purpose are to either cause fear or that you, as the defendant, have an awareness that the actions will cause fear. Producing a gun, drawing a gun during a foot chase, he's not... In this case, he had ample opportunity during the early parts of the foot chase to throw the weapon away. Okay, he does not draw the gun until Officer Bainey starts to approach him with Enderco closing from behind, and then you have the simultaneous warning given, and then you have the tackle by Enderco. So maybe Enderco did not specifically see a gun, but Officer Bainey did, and Mr. Jones did not produce that weapon, draw that weapon, until Bainey approaches him. So that's assault of conduct, and I don't think that there's any procedural error in this case either. Judge McLaughlin specifically asked Mr. Patton several times what is the basis for the variance. The judge retired the chambers for approximately half an hour, came out and said, I've given this considerable thought, and I don't think, bless you, that a variance is not warranted in this case. So I think on all three grounds that this court should affirm the judgment of conviction sentence below. Thank you. Thank you, Your Honors. Rebuttal? Your Honors, if you would be inclined to hold that the fleeing and eluding is divisible because it sets out either failure to stop or flees or attempts to elude. The Pennsylvania Superior Court in Commonwealth v. Katone, and this is on page 34 of our merits brief, our opening brief, says that the elements of the misdemeanor version of the fleeing and eluding is, quote, an operator's willful failure to bring his or her vehicle to a stop in the face of an audibly or visually identifiable police officer's signal to do so. So just failure to stop. And again on page 34 of our brief is the factual basis of Mr. Jones' guilty plea to the fleeing and eluding count. And that factual basis was, in this case, on February 16th of 2008, you failed to bring your vehicle to a stop when you were being pursued by Officer Ryan Onderko of the Erie Police Department. That was on February 16th of 2008 at West 38th and Liberty Streets in the city of Erie. That constitutes the crime of fleeing or attempting to elude a police officer and, as amended, is a misdemeanor of the second degree. So it was clearly what he pled to was failing to stop. That is what he admitted to. That's the elements that he admitted to. Your Honor, I do think Chambers is a cautionary tale of going too far with the hypotheticals of what all bad things could happen. And, in fact, in this case, in this court after Chambers Respond to Mr. Ivory's point, which is in Chambers, it's not always the case that a failure to report is going to put you into conflict with the police. But a failure to stop, by definition, will have you in conflict with the police because, by definition, they're there giving you a command and you're failing to obey it. That is a conflict. It's inherent. I would cite the United States v. Hopkins, which was this court ruling that Pennsylvania's misdemeanor escape conviction was not a crime of violence following Chambers. And, in that case, officers, with an arrest warrant, went to arrest the defendant for a misdemeanor offense. And, under Pennsylvania law, once you are confronted by the police with a warrant, you are considered to be in custody for purposes of the escape statute. He ran and was taken into custody. This court found that the escape was not a crime of violence because Pennsylvania graded escape as a misdemeanor, but it was a felony if the actor employed force, threat, deadly weapon, or other dangerous instrumentality to effect the escape. And they said this defendant was found guilty of the misdemeanor escape, which meant that he was only being apprehended for a misdemeanor, and it means he did not use threat or employ force, threat, or deadly weapon. And so they found that the misdemeanor violation of the escape was conduct materially less violent and aggressive than the enumerated offenses. Is that really relevant, though, when what we're talking about here involves a vehicle and the existence of the vehicle and the special danger posed by a vehicle seems to weigh so heavily in the Supreme Court's discussion? Well, the last thing I guess that I would like to leave on the fleeing and eluding is the idea that if you find that a Pennsylvania misdemeanor is a crime of violence, what you'll be saying is that even though the state legislature and the state courts have said what separates a misdemeanor, fleeing and eluding from a felony, is if the defendant engages in conduct that puts the public or the police, anybody, in danger beyond a run-of-the-mill failing to stop. And you'd be saying that even though that's what distinguishes those two, the misdemeanor still presents a serious potential risk of physical injury to another. And I just think that's pretty incongruous that you would find that the misdemeanor version would present that risk when the Pennsylvania courts said, in the ordinary case, that's the felony version. On the aggravated assault, I would like to point out that the government has never argued that Officer Boehne was the victim of the assault. They did not argue that in the district court. They didn't argue that in their briefs to this court. And so I would say they have waived any type of argument that somehow Boehne was the officer who was assaulted. They have always said that Ondurco was the officer that was assaulted. Thank you. Thank you. Cases well argued have been taken under advisement.